Dargan, Oh.,
dissenting. I wish briefly to state, that I have seen no reason to change the opinion .which I have expressed in the circuit decree.
The testator directed that after the death of his wife, the property given to her for life should be “divided among his surviving heirs, share and share alike.” This language must be considered as having been spoken at the time of the testator’s death. And thus spoken, without further explanation, or qualification, it could only embrace the persons who were his heirs at that time.
If the testator had declared, that after the death of his wife, the property should be divided among the persons who might be his heirs at that time, or had used any words of similar import, then the construction given by this Court would be correct. But the will may be scrutinized in vain for any manifestation of such intent.
It is perfectly obvious, that the construction which the Court has given to this part of the will, attaches no meaning to the-word “ surviving.” This construction makes the meaning the same as if the testator had directed the property to be divided among his heirs generally, and the word “ surviving ” had been omitted. Yet it must be clear, that the testator did mean something by employing that expressive word.
The construction given in the circuit decree makes the words “ surviving heirs”, spoken by the testator at his death, mean his surviving children. The context of the will affords some indication of the meaning which the testator attached to the word “heir.” In directing the manner in which the property given directly to his six children should be divided, namely, that it should be divided into six equal parts, and drawn by lot, he *41 directs that the first drawn lot shall be assigned to his “ eldest heir,” Hugh Godbold, &c. He thus indicated the meaning which he attached to the word heir, using it as a synonime with child. It is more than probable that when he used the word again in the clause under construction, he attached to it the same meaning. It is reasonable to suppose that a word occurring several times in the same instrument, written by the same person, has been used each time in the same sense.
Whatever the testator may have meant by the words his surviving heirs, I feel very confident that the construction adopted by the Court is not the true one. The results of that construction are perfectly startling, and plainly shew that such could not have been the intention of the testator.
When the Court decided that the issue of the deceased child should be let in, a per capita distribution among them and the surviving children became inevitable. The words share and share alike make it a tenancy in common.
It was thought a hardship, (such was the argument of counsel,) that the issue of the deceased child should be excluded: and it was contended, that inasmuch as the testator had given the mother an equal share in the first distribution after his death, it follows, that he intended that her issue, however numerous they might be, should come in for a per capita division of the estate in remainder, and each one of them take an equal share with his own surviving children. The testator, in my opinion, has not said so, either expressly or by implication.
It is admissible, (and is so allowed to be,) to test the correctness of a construction by its results, actual, probable, or even possible. Let us first test this construction by its actual results. The surviving children of the testator are four : the children of his deceased daughter, Mrs. Munroe, are five. The construction given by this Court assigns to the children of Mrs. Munroe, the testator’s grand-children, five-ninths of the estate, and assigns to the four surviving children of the testator among them only four-ninths. Such an intention, I am sure, was very foreign from the testator’s mind. It does not alter the case, as to the ques *42 tion of construction, because the Court, on the statement of counsel that the Monroes claim no more, (though some of them are infants,) give them only the share to which their mother, if living, would have been entitled.
But let us test this construction yet further by results not improbable. Suppose the testator’s family to have been very prolific. Suppose that five out of the six children had died before the tenant for life, leaving a numerous offspring, in the aggregate 20, 30 or 50 in number. Suppose the surviving child of the testator also to have had a numerous family. Then upon this construction each one of those numerous descendants of the testator would come in for an equal share, restricting the surviving child, with his numerous family, (all descendants of the testator, to a 20th, 30th or 50th part, as the case might be. Such could never have been the intention of the testator. This construction makes the testator give the preference to his remoter descendants over his' own children, and this is not in accordance with nature. It is more natural to suppose that he had excluded the remoter issue, and given the whole to Ins own surviving children. This, I think, he has done, or intended to do.

Decree modified.